Final case of the morning for argument is Steefel Levitt v. M. Pascoe v. Astor Holdings. May it please your honors, my name is Elliot Bean. I'm here to represent the appellants, Astor Holdings, Roebuck Wars, and the individual appellant as well. There are many, many issues, heavily fact-laden in this case. But what I thought I would do this morning, at least to begin with, subject to questions from the court, is touch on a couple of really key legal issues. I don't think they're nearly as difficult as the ones that we've just been airing in the last case, but they really are fundamental to the proper disposition of this one. And the first one is this. We've raised arguments about three summary judgment rulings, and we're told by the two law firm appellees that the summary judgment rulings are unreviewable. They're essentially moot because the case proceeded to trial on the remainder of the case, and there were verdicts and then a judgment and so forth. And I just argued in both our opening and reply briefs that this just violates basic appellate rules. We've cited the Guerin case, G-U-E-R-I-N, where this court, not this panel, but this court reviewed a grant of a summary judgment against an affirmative defense and then determined that was not correct and found trial prejudice because the subject matter of that affirmative defense had been excluded from the jury trial. And in rereading the case that the law firm appellees cited last night, the Banuelos case, they said there's a great quote in that case that says it's a pointless or it's an academic exercise or something of that effect to review summary judgment rulings when there's already been a trial. But, in fact, that is not only dictative, but it's not applicable. Even in the Banuelos case, the court actually wound up reversing a denial of a summary judgment after there had been a judgment on the merits at the next phase. It wasn't a jury trial. And so the disposition in Banuelos was the same as in Guerin. The summary judgment ruling, the interlocutory summary judgment ruling was vacated, and on that basis the ultimate judgment was reversed or vacated, either one. So unless there are further questions about that, I just want to make sure that I'm not talking about a moot summary judgment rulings. I think they're certainly reviewable. They're reviewable if the summary judgment result deprived you of evidence which would have been relevant and substantial in your jury trial. I think they would be reviewable anyway. Whether they'd be reversible or prejudicial is the next issue I was going to touch on. And we've argued the OBRI case, which is a case from two years ago, which stands for the proposition that certainly in a civil case like this, if the court does find if there was error affecting the trial, if there was error at the trial, not affecting the trial, if there was error at the trial, there is a presumption of prejudice, and it is the appellee's burden, the party that benefited from the error, that's a quote from the OBRI case, it's the burden on the party that benefited from the error to demonstrate that there was not prejudice. Let me ask this. Yes. Doesn't the presumption of prejudice cease to control if we find that summary judgment was proper? Oh, if you affirm the summary judgment rulings, then it's over. Sure. Yeah. I'm just trying to defend the cognizability, if you will, or the materiality of the summary judgment rulings, despite the fact that there was a trial later on. And as far as just the substance of the prejudice, I think it's going to be a very difficult burden for the law firm appellees to overcome the presumption that there was prejudice. I wasn't planning to get into that. I could, if you like. On the OBRI case, the law firms also argue that it was limited to evidence rulings. They talk about not summary judgment rulings. But our case, based on the summary judgment rulings, there were rulings excluding all the evidence on the subject matter of those three summary judgment rulings  So we have a very wholesale exclusion of evidence, and so the OBRI case is directly in point that the presumption of prejudice would apply to our case. On the merits of the case, again, there are a number of issues I don't intend to address. Let me ask you about one of them. Please. You failed to discuss in your briefs whether the jury verdict was supported by substantial evidence. Have you waived that argument? I don't make the argument, so to that extent, yeah. And our argument, yeah, that's true. And our argument is that the substantial evidence of the verdict, in fact, the verdict is really immaterial because we believe that those summary judgment rulings and the exclusion of evidence did constitute reversible prejudice at the trial. So how can you use the result of the verdict, whether supported by substantial evidence or not, to kind of insulate itself from this review for prejudicial error? It doesn't compute in our judgment. So, no, I didn't attack that. In fact, I know one of their expert witnesses who's a wonderful lawyer, Michael Aarons. Let me ask you if I understand your argument. You're not questioning the trial as it was constituted there was sufficient evidence, but you're saying that if the trial was not valid because of the rulings of summary judgment that excluded evidence, it would have been under trial. That's correct. And I guess I should qualify that. I didn't think of one issue where we do challenge the evidence at trial. And that's for the judgment against Mr. Plotnick individually on the grounds that he supposedly orally agreed to undertake the obligation to pay not only for the very short period of service to him and the claim for damages by the Pasco firm is not even limited, the claim for personal liability, is not even limited to the services that they did perform for him individually, but they use this argument to support a judgment against him personally for all the services rendered to all the corporate clients as well and all the prevailing party fees for the corporate clients. But on that issue, we do challenge the sufficiency of the verdict. I want to correct my previous answer. Insofar as the claim was made that there was an oral agreement not to his representation by Pasco, we agree that that was so, but to his personal liability to pay for that. There is simply no testimony to that effect. And I don't think the appellee's briefs cite any such testimony. I think the closest they come is to say, well, it was Mr. Pasco's view, in other words, his understanding of something, that Mr. Plotnicky had personally taken on an obligation to pay for something. And I don't think that's substantial evidence of an agreement. You make statements such as, I'll make sure you get paid, I'm waiting for money to come in from the United States. You know, I have those statements up here. There's nothing in there that says I entered into an oral agreement with Pasco to pay for personal services. He was always the spokesperson for the corporate entities in all of his dealings. And did you ever have any discussion with you in which he told you you would get paid? He did. Does that mean he would pay himself? It doesn't mean that. I don't think that's substantial evidence of an oral agreement that I'm going to pay personally. I would inquire Mr. Plotnicky, give him all this other stuff. These are on page 369 and 370 of the transcript. He asked me to be patient. Does that mean he agreed to pay personally, even for the, I think it was something like $28,000 worth of time? We're not the jury. I imagine this was already to the jury. We are, and it's up to you, William, to determine whether a reasonable juror would find that when he said, I'll get you paid, he meant I, not Pastor Holdings. Well, in all my years of practicing appellate law and understanding the substantial evidence rule, I don't believe that there's any, that that is not substantial evidence. And this is a rather, I'm sorry, I'll. If there had been an objection, the question was ambiguous. The question should be reframed. If there had been an objection that guarantees another's death not inviting a statute of crimes, we might be somewhere else, but there weren't. Well, let's look at the testimony, Your Honor. It's page 369, line 16. Question, did he ever have any discussion with you in which he told you you would get paid? Answer, he did. This is Mr. Pascoe's testimony. I just don't see anything in that question or answer that a reasonable juror or anybody reasonable could say, I promised personally, although I did not sign the engagement agreement that you, Pascoe Firms, said always insists on written contracts, I personally agreed to pay for the time you spent in representing me. I just don't see it in that sentence. Did he ever have any discussion with you in which he told you you would get paid? I don't see that that's substantial evidence of some value, some significant weight that would support an oral agreement to pay personally. Not on this record, and you don't even isolate on that sentence. In a record which undisputably had the Pascoe Firm asking him to guarantee or sign their engagement letter in his personal capacity, and he does not. And the opportunity to sign the guarantee in his personal capacity, he refused. It was either a personal, I don't remember now, it was either a personal guarantee or signing it personally. And it's undisputed that he declined to do that. He would not do it. I think the testimony was that we never got back an executed copy, I think was how the testimony actually played out. But I think that the deference to verdicts has its limitations. I think you've got to find something in the testimony to support it. I just don't think this does it. I don't know if you want to pursue that point or not further. But the other, I want to save some time for rebuttal. But on this personal liability issue also, another legal point we made that I think is pretty important, and I don't believe the appellee law firms responded to it in their briefs, that under California law, which, of course, governs this case, you can have a representation agreement, and there can be an attorney-client relationship without an obligation on the part of that client to pay. And I cited the Mallin & Smith Treatise, which recognizes many situations where a corporation will, or a corporate client, or it could be an individual client, will take on the responsibility to have an attorney represent someone else. Insurance companies do it. Indemnity arrangements do it. And this case is a typical situation. This case was always about the corporate entities. Mr. Plotnick, he was never a party to any of these disputes. He was the corporate officer. And when he finally got hauled in against his will into the case over this contempt hearing, there was suddenly a necessity for him, arising out of the corporation's problems, and incidentally arising out of the malpractice, as we allege, he got hauled in and needed a lawyer. So as part of the representation of the corporation, they said, well, would you represent me too? And that's a perfectly understandable, and as a matter of California law, it's perfectly appropriate to have that representation agreement, and yet it'd be divorced from a payment obligation. Somebody else was picking up these bills. And, in fact, the Pasco firm, even during this particular time, when they were representing Mr. Plotnick personally, continued to address their bills and to state in their cover letters that, you know, our bill for the ‑‑ actually, I have it here, I think. Our bill for ‑‑ yeah, here's the bill through April 30th, the very period when they were representing Mr. Plotnick. Here's our statement for services, quote, rendered on behalf of Profile Records, Inc. No mention to say, well, this bill should be rendered on behalf of Mr. Plotnick. And it was sent, as all their bills were sent, to Mr. Plotnick at Profile Records, Inc. No indication that they were sending it to him personally. So I think that distinction between a representation arrangement and a payment obligation should be maintained. My clock is telling me I'm at 5.37 left. I'd like to reserve some time for the rest of the Council questions. How can you prove that damage is resulting from Paschal's allegedly unauthorized agreement if the bankruptcy judge stated that, quote, the court was disinclined to permit Astor de Blas confirmation? Well, first of all, I have to remember that this is a summary judgment case, and it was the other side's burden to establish, you know, the opposite of the way you're asking this question. And I think all the evidence relevant needs to be construed in light in the favor of the opponent to the motion. But I think the papers ‑‑ I think the important point here is that the ‑‑ you're asking about the damage from ‑‑ Paschal's allegedly unauthorized agreement. Oh, to the consent to the reorganization. That's right. A plan. I'm a little confused because I think the consent to the reorganization plan caused the problems, I guess the answer to your question is that it caused the problems of the subsequent New York action against Mr. Thorpe in New York, which was found to have violated the discharge, which was the result of Mr. Paschal's unauthorized consent. Now, later, much later, we have this motion by Thorpe's bankruptcy lawyer before Judge Jaroslawski to make additional findings, and this is, I think, after the Thorpe action, after the action against Thorpe in New York had already been filed. I think this hearing, yeah, this hearing took place on October 10th, 2000, so I guess it was before, it was actually before the Thorpe action was filed in New York. But there were plenty of other consequences aside from the bad faith. In fact, the Thorpe action itself, which led to the contempt hearing and the threat of punitive damages and so forth, did not assert, at least that was not maybe corrected by opposing counsel, I don't believe it asserted that the bankruptcy filing itself was in bad faith. I think that had more to do with the Jaroslawski action. I must say that my memory is a little bit unclear. It's a complex case. Yes, and I'm sorry, I'm sure my friends would correct me if I'm wrong. Yeah, yeah. If there are no other questions now, I would like to reserve a few minutes for rebuttal. All right. Thank you. Good morning. May it please the Court, I'm David Evans of Haight-Brand, a bone steel attorney for Pelley, Stiefel, Levitt & Weiss. Mr. Rocha, the attorney for Mr. Pascoe and I have agreed to divide our time, so I don't intend to take more than 10 minutes of the 20 allotted. Of course, if the Court has specific questions, I'd be happy to address them. I think Mr. Bean has resolved a couple of issues for us concerning the substantial evidence that supported the jury verdicts on the breach of contract claim and on the other professional negligence claims that were asserted against my client. In particular, I would simply call the Court's attention to the fact that the breach of contract verdict essentially subsumed any issue that might have previously existed regarding the summary judgment on the account stated claim, essentially the same invoices, the same damages, and I believe that would resolve that issue. In addition, the jury's verdict on the principal malpractice issues that did proceed to trial also obviates a need to review, in my opinion, the determination that Mr. Plotnicky was not entitled to allege that he could have obtained a better settlement because he had no evidence to that effect that was presented in connection with the motion. And I should say one thing. Since I've been living with this case for quite a long time, to say that Mr. Plotnicky is just a corporate officer, as Mr. Bean said, is like saying George Bush happens to be a resident of Washington, D.C. Mr. Plotnicky is the principal architect and sole decision maker in all of these entities, and these are small, closely held pocketbook, if you will, entities. Steeple and Weiss, Steeple, Weiss, are a very sophisticated firm. I think Pascoe is a sophisticated lawyer. They have retention agreements. If they meant to get Plotnicky personally on the line, why didn't they get him to sign? Well, let me clarify. As an individual. Let me clarify. That is not an issue pertaining to Steeple. Steeple did not sue Mr. Plotnicky individually, and we are not dealing with his personal liability. That's an issue Mr. Rocha will address. We represented Astor Holdings, Robot Wars, and Mr. Plotnicky's DBA called Smile Astor Place. So if that's not an issue for Steeple, why were you mentioning George Bush in Washington, D.C.? Well, perhaps I – As an example. Perhaps – Do you want to poison the well a little bit? No. No, I think the point is that in looking at the evidence that was submitted in opposition to the motion for summary judgment, Judge Spiro was considering Mr. Plotnicky's declaration, and Judge Spiro at that time well knew that Mr. Plotnicky was the person who would be in the only position to present evidence on behalf of those entities. So it was credibility and the weight of his evidence rather than any alter ego personal liability. That issue is not before us at this time. Let me make one comment about the summary judgment issue. Judge Spiro, I think, correctly noted and correctly examined the level of opposition that had been presented in connection with the summary judgment in reaching his decision. And I think in that regard, he specifically relied upon the Celotex case and the provisions of Rule 56E, which require that the opponent of a summary judgment motion must specifically designate specific facts showing a genuine issue. And for Mr. Bean to now raise a number of other documents that were in the record and assert that they are a basis on which the summary judgment should be criticized, I think begs the question of the importance that the Supreme Court has given to the specific mandate of Rule 56E, and that is that it's the opposing party's burden to call the court's attention to and raise the specific facts that he or she believes would constitute a basis to oppose the motion. That wasn't done here. I think the other point that is worth noting here, in connection with the arguments raised by the appellants in their reply, is that the issue of the supposed bad faith of Mr. Thorpe's bankruptcy that became a problem for one of four claims in the Roski case in New York had already been determined and resolved by Judge Jaroslawski adversely to that point. In other words, to say that Mr. Schockett of the Stiefel firm failed to somehow perceive that he should second-guess the attorney in New York who had been representing Mr. Plotnicki's companies for many years, specifically in connection with claims against Roski, had not done her homework and did not know that this was an issue, that's all obviated by the fact that that was never going to be a finding Judge Jaroslawski was going to make in the first instance. And in any event, the trial attorney, Ms. Jacobs, at Duane Morris, testified that she was able to proceed to trial on essentially the same claims with the same evidence seeking the same damages with one very minor difference, even without the claim that was predicated upon the supposed bad faith of Thorpe, the claim against Roski that he had somehow aided and abetted a breach of fiduciary duty. So I think on those points alone, I think there is simply no basis to consider that the harm that Mr. Bean is suggesting occurred to Mr. Plotnicki's company's positions at trial would have made any difference. The result of the summary judgment ruling was essentially to preclude Mr. Plotnicki's companies from asserting that Mr. Schock had had a duty to have somehow warned Ms. Jacobs of Duane Morris that there was a problem with one of several claims. That did not affect the breach of contract issue. It did not affect the question of whether the lawyers could be responsible for any harm Mr. Plotnicki claimed to have suffered because he was dragged into and his companies were dragged into the contempt proceeding. I'd like to answer any questions the court might have. I'll leave you with one thought. This is the 18th court that has considered over the last 10 years issues pertaining to Mr. Plotnicki's failed venture with Mark Thorpe concerning the Robot Wars presentations. I hope that we are close to finality on all of these matters. So unless the court has other questions, I'll defer to Mr. Rocha at this point. Thank you, counsel. Thank you. I'll go directly to the issue of substantial evidence concerning the direct liability of Mr. Plotnicki. The jury heard the evidence, the evidence in the trial concerning Mr. Plotnicki, the evidence that was cited in the brief to the extent that Mr. Plotnicki requested, undisputed that Mr. Plotnicki requested that Mr. Pascoe represent him individually, personally. Counsel can represent a director of a corporation personally, and one of two things can happen. Either the corporation can pick that bill up as part of its corporate policy, or the corporate director can pay the bill. Now, as to that, if he asked for certain services for himself as a director, I think you've got no problems. But where is the evidence that Plotnicki should be individually liable for Astor Holdings bills for services that are rendered to Astor Holding? You have nothing in writing in this form of a guarantee. I don't know why the statute of frauds was not raised, but it wasn't. But where is the evidence that Plotnicki agreed or should be held to agree by some promissory stop of a fraud basis? There is no evidence that Mr. Plotnicki ñ let me answer your question directly. Astor Holdings initially retained ñ Profile Records way back when initially retained Mr. Pascoe. At no time did Mr. Pascoe ever ask for a personal guarantee from Mr. Plotnicki, nor at any time in the evidence did Mr. Plotnicki ever tell Mr. Pascoe he was not going to guarantee. So the guarantee issue came up vis-à-vis the Stiefel law firm in the trial. It had nothing to do with Mr. Pascoe. As to the retention by Mr. Plotnicki of Mr. Pascoe, Mr. Pascoe was asked to represent him personally after he was brought into the contempt proceedings. Mr. Pascoe sent to Mr. Plotnicki a separate agreement which apparently was not signed nor returned. Mr. Plotnicki did not ask Mr. Pascoe to segregate the fees that were billed during that time. So Mr. Pascoe, a very careful lawyer, understood the necessity of sending a separate agreement to Mr. Plotnicki for services that would be rendered to Mr. Plotnicki, not to the corporation. That agreement was not signed. Now, how do you get from that refusal to sign a separate agreement to disregarding the corporate entity and making Plotnicki liable for Astor's bills? Because Mr. Plotnicki promised Mr. Pascoe that his fees would be paid and to send the bills to Astor. And that's what he did, attention Mr. Plotnicki. And at no time did Mr. Plotnicki ever object to those bills being paid. Wait a minute. He said, send the bills to Astor. You will be paid. Did he ever say, and if the corporation has not enough funds, don't worry, I will pay you out of my own pocket? There was not testimony to that. But Mr. Pascoe testified he understood that he had a separate agreement with Mr. Plotnicki and that they were jointly responsible because as Mr. Plotnicki in fact testified that he told Mr. Pascoe to send the fees pursuant to the original contract for profile that Mr. Plotnicki in fact signed. And that contract in fact, the very last sentence says that if there are more than one party to this contract, each is jointly and separately responsible. Mr. Plotnicki himself made himself a part of that contract when he told Mr. Plotnicki, bill me through the contract with Astor. But what was the effect then of the second contract which he refused to sign? He testified he refused to sign it. Mr. Pascoe did not so testify. He says it was not returned. But he billed him through that. And then after the fact. He said bill me through the, where was that? He actually said bill me. In his testimony that was submitted, that was cited, he said to bill me through the Astor, it was actually profile holdings that became then Astor's contract. And so that's what Mr. Plotnicki, that's what Mr. Pascoe did. And then thereafter. His personal services, right? He says bill me through Astor for the services you're rendering me. How much was that? He never asked for it to be delineated. This was ongoing. The representations of the two of them, of the entities, were substantially. The burden of proof is on Mr. Pascoe who's trying to enforce a contract. And he has to show how much was properly billed, let's say, to Plotnicki for personal services, how much was properly billed to Astor. And then if he wants to tag Plotnicki on the Astor contract, he's got to prove that Plotnicki, through some device of alter ego or through contract, has agreed to pay for Astor. Where is that evidence? The evidence actually comes when, in fact, after the process is ongoing and Mr. Pascoe has not been paid and he asks Mr. Plotnicki when I'm going to get paid. Mr. Plotnicki, in fact, tells him that Mr. Plotnicki has yet another company that owes him money and when he gets money from that other company, a U.K. company, he will be paid. Owes him money. Plotnicki or Astor? Plotnicki, presumably, because that's what he says. Presumably, but it could be ambiguous. It could be one or the other. You're trying to enforce a personal liability here on a corporate officer. You've got the burden of proof. My question is, is there any reasonable evidence from which a reasonable jury could find that there was an assumption of liability by Plotnicki directly and personally for the debts of Astor? For specifically the debts of Astor, he advised, I don't think you can distinguish, for his own debts, yes. For Astor, I don't see precisely. Mr. Plotnicki stated, however, in his testimony that he never made the distinction in the billings. There was testimony that Mr. Pascoe attempted to do so when asked to do so. But the point being, Mr. Plotnicki promised to make the Mr. Pascoe that he would get paid. That promise was breached. He was not paid. The full amount owed was $103,000. And Mr. Pascoe is entitled to that. And the jury found specifically, based upon the evidence that was submitted, that Mr. Plotnicki breached a contract. And the consequences of that contract were the full amount of the services rendered. I'd also like to address the court's question concerning the confirmation hearing. That and the consequences of the allegation of a, that the, that the damage was caused when, in fact, Judge Jaroslawski specifically stated that he was going to confirm the And following the court's ruling on summary judgment, even up until the date of trial, the court offered again, what evidence of any other damage is there? And Mr. Plotnicki offered none. His counsel had nothing further to offer at that time. And even going back to the account stated cause of action, which goes directly to Mr. Plotnicki as well, on the notice, ER062, it's specifically directed to Mr. Plotnicki, it's specifically directed to Astor Holdings, it's specifically directed to Robot Wars, it's specifically addressed to SMILE. It goes to each of them, that each will be responsible. And in the points and authorities, it talks about the fact that Mr. Plotnicki was individually, was individually retained and was individually billed, and the bills were sent to him in the declaration of Mr. Pasco, that Mr. Plotnicki never objected, save and except the one area that was discreetly cut out by the court. And in response to interrogatories verified by Mr. Plotnicki, he verified that he was jointly represented with Astor in the motion for summary judgment on that issue. At no time, despite the notice that was directed to him, did he submit anything that stated that he should not be personally liable on the account stated cause of action, an account stated maybe implied or written, and it's a new contract. And he did not dispute it at that time, and he never disputed it thereafter until we got to this court. And if he is responsible on that, then he can look to Astor to indemnify him, if that's his position. Is it your position that Plotnicki has waived the issue of personal responsibility by failure to raise it in his brief? With respect to the staff person? Yes, absolutely. In the Pasco brief, in the Plotnicki brief. If I may, on his brief on the issue on summary judgment, Your Honor. If there are any other questions that the court would like me to address at this juncture? Let me just say, if we find that summary judgment was improper, was it prejudicial to exclude the related affirmative defenses from the trial on the merits? If the summary judgment... If we find the summary judgment was improper. As I understand, the trial judge excluded the related affirmative defenses at the time of trial. Is that correct? The judge did exclude some affirmative defenses at trial. It excluded those defenses to which Mr. Plotnicki had not demonstrated that there was any basis for going forward. Including, for example, the affirmative defense as to what occurred at the confirmation hearing, it was very clear that he had nothing further that he could add that caused him any harm. It becomes a question of abuse of discretion at that time as to whether the evidence on that issue, not relevant, is going to lead to a further, you know, and waste of the court's and jury's time. The evidence was not relevant at that point. He did not demonstrate any reason why that area of inquiry should be pursued. Thank you. On the last part about a waiver, I must say I couldn't entirely hear what counsel was saying about why we waive, why Mr. Plotnicki waived this issue. But, first of all, there was a motion by Mr. Plotnicki after this issue, of course, came up as a result of the jury verdict. And there was a motion to alter, a motion for new trial to alter the judgment, attacking the jury verdict by Mr. Plotnicki immediately after the trial. I haven't reread it in a minute since I've heard this and heard incompletely what the argument was. But I don't see how there could be a waiver. He certainly took a timely appeal from the verdict, finding him personally liable. I don't think he, the response was that he waived it. It was that it was not, the trial judge found it not relevant. Well, why don't you get on to that? You've only got a minute and 45. Yeah, okay. On the substance of it, this is the first I hear of any testimony that Mr. Plotnicki said, bill me, in the sense of bill me personally. I don't recall seeing that in the appellee's briefs. I'm not suggesting that they aren't there, but I just don't recall it today. This strikes me as something new. And I know we cited the testimony by Mr. Plotnicki at trial. This is in our reply brief, page two to three. Quote, the arrangement wasn't for him to bill me personally. The arrangement was for him to represent me personally under his engagement letter with Astra Holdings. So the bill me testimony that I don't recall, I really have some questions about. The only other point I want to say in my 56 seconds is that the Stiefel argument was that the verdict in favor of their breach of contract claim against the Astra parties subsumes, I think was his word again, the account-stated finding on summary judgment. But, again, I think it's what I was talking about at the beginning of our argument this morning. The summary judgment ruling itself, we have a challenge. We believe it was improper. And the verdict of damages for the nonpayment verdict was at a trial that we believe was affected by prejudicial error. So, again, I don't think anything is subsumed here. We've got real issues to address on this part of the case as well. So I will honor my time limit. I really have nothing burning to say. Thank you for your attention. Thank you, counsel. Thank you both. The case just argued will be submitted. The court will stand in recess for the day.
judges: Nelson, Reinhardt, Bea